398 So.2d 400 (1981)
Randall LOLLAR
v.
STATE.
6 Div. 418.
Court of Criminal Appeals of Alabama.
March 31, 1981.
Rehearing Denied May 5, 1981.
Michael C. Cornwell, Tuscaloosa, for appellant.
Charles A. Graddick, Atty. Gen., and Deborah Hill Biggers, Asst. Atty. Gen., for appellee.
BOWEN, Judge.
The defendant was indicted for the offenses of grand larceny and buying, receiving and concealing stolen property. A jury found him guilty of grand larceny "as charged in the indictment." Sentence was three years' imprisonment. The defendant is represented at trial and on appeal by the Public Defender. The only issue raised on appeal is the sufficiency of the evidence.
The conviction of the defendant is based on pure speculation, suspicion and *401 surmise. Affording the State all the reasonable inferences from the evidence which we view in the light most favorable to the prosecution, the evidence connecting the defendant to the crime is grossly deficient to support his conviction.
The only evidence which even tends to connect the defendant with the charged crime came from witness Julie Beard. In its brief, the Attorney General "adopts" the facts as stated by defendant's appellate counsel and acknowledges them as being "substantially correct". Mrs. Beard's testimony is summarized in appellant's brief as follows:

"MRS. JULIE BEARD was called as the State's first witness. She testified that she went to Appellant's parents' home on the morning of May 10, 1979. While at that resident, she saw Appellant and his brother-in-law, Bobby Cannon and Mr. Cannon's dark green Dodge pickup. The witness took Appellant's mother to a store and then back to the Lollars' residence. Mrs. Beard returned home around eleven-thirty and found a torn screen. While gathering her garbage, she saw the green pickup pass in front of her house. It was occupied by two young males, but Mrs. Beard could not identify them. She took her garbage to the dumpster approximately a half mile away. On returning home, she saw a green pickup leaving the upper part of her driveway. When Mrs. Beard entered her home, she discovered that her stereo, a tape player and a shotgun were missing. Further checking revealed that her back door was now unlocked. The truck she saw leaving was dark green and ran loud like Bobby Cannon's. Mrs. Beard reported the incident to the Sheriff's office and after talking with an officer she found the truck on a logging road a half mile from her home. No one was around the truck and there was nothing in the truck. She later returned to the vicinity with her husband and they located the missing items near the location where she had seen the truck. (Mrs. Beard estimated the value of the missing items to be approximately $250.00). During the interim between the first officer coming to her house and her husband arriving, Mrs. Beard saw the truck after seeing it on the logging road. The truck passed her house and she went to Lena Kimbrall's residence where she found the truck, Appellant, and Bobby Cannon. When she saw the truck pass on this occasion, she could not tell how many people were in the truck or identify any of them.

"ON CROSS, MRS. BEARD stated that Appellant is her nephew by marriage and she had known him for thirteen years at the time of the incident. Her home is located on County Road 63 near the Gorgas community and is situated approximately 75 feet from the road. She described the green pickup as a 1961 or 1962 model that was noisy. When Mrs. Beard saw Appellant and Bobby Cannon at the Lollars' residence that morning, they left some thirty minutes before she left with the Lollars. During the time she was getting her garbage, she saw the truck pass once going in a northern direction. This occurred between 10:00 and 11:15 a. m. She could not tell who was in the truck. She viewed the truck from her porch on this occasion. The witness then took her garbage for disposal, returned fifteen minutes later, and saw a green truck leaving her driveway about two hundred feet away. She could tell that the truck was a green Dodge but she could not tell how many people were in it or whether it had a tailgate. There was nothing unusual about the manner of the truck's leaving. She next saw the green pickup on the logging read at approximately twelve noon. The truck could be seen from County 63. A green pickup was subsequently seen by Mrs. Beard when it passed her house around twelve-thirty. She only saw Appellant in the truck on one occasion that daywhen she first saw it at the Lollars' residence that morning. (R. 36) The witness last saw the truck at the Kimbrells'. When she arrived there the truck was unoccupied but she found several persons there: Appellant, Bobby Cannon, Mr. and Mrs. *402 Kimbrell, Mr. and Mrs. Lollar, and another boy. Appellant and Bobby Cannon were fixing someone else's vehicle.
"Mrs. Beard further testified that three neighbors live within a half mile from her house and the county road which passes in front of her house carries traffic which passes on a pretty regular basis."
The Attorney General argues that this testimony is sufficient to connect the defendant with the crime because of Mrs. Beard's testimony that one of the men in the truck "resembled" the defendant. This is not an accurate summary of Mrs. Beard's testimony as shown by the following question and answer.
"Q. And so while you couldn't tell exactly who was in the truck, the persons in the truck, one of the persons in the truck had the same color and length of hair as Mr. Lollar (the defendant)?
"A. Yes, sir."
The defendant had long, "about neck length", blonde hair. There was no testimony that his hair was especially distinctive in any particular way. We emphasize that this was all the evidence which, under any interpretation, could be construed as even tending to implicate or incriminate the defendant.
The mere presence of a person at the time and place of a crime is not sufficient to justify his conviction for the commission of the crime. Thomas v. State, 363 So.2d 1020 (Ala.Cr.App.1978); Kimmons v. State, 343 So.2d 542 (Ala.Cr.App.1977). The possibility that a thing may have occurred is not evidence, even circumstantial, that the thing did occur. White v. State, 373 So.2d 356, 358 (Ala.Cr.App.1979).
We need not add more. Convictions based on speculation and suspicion have no place in our system of criminal justice requiring proof beyond a reasonable doubt. Because the State utterly failed to connect the defendant with the crime for which he was convicted, his conviction must be and is reversed and rendered. Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).
REVERSED AND RENDERED.
HARRIS, P. J., and TYSON and BOOKOUT, JJ., concur.
DeCARLO, J., dissents.
DeCARLO, Judge, dissenting.
In view of the Alabama Supreme Court's recent holding in Dolvin v. State, Ala.Cr. App., 391 So.2d 139, I do not believe it was unreasonable for the jury to exclude every reasonable hypothesis except that of the appellant's guilt.
My review of the facts as shown in the majority opinion, when examined by the test of the Supreme Court in Dolvin v. State, supra, and laid down in Cumbo v. State, Ala.Cr.App., 368 So.2d 871, indicates the existence of a reasonable theory from which the jury could have concluded that the appellant was guilty of the burglary. Therefore, I respectfully dissent.